Royce T. GILBREATH, Appellant,

v.

STATE of Alaska, Appellee.

No. 7097.

Court of Appeals of Alaska.

Aug. 26, 1983.

---

John M. Murtagh, Anchorage, for appellant.

Gail T. Voigtlander, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Royce Gilbreath pled *nolo contendere* to one count of misconduct involving weapons

in the first degree, AS 11.61.200(a)(1). He was sentenced as a third felony offender under the presumptive sentencing statute; the prior convictions proven by the state were for assault with a dangerous weapon in 1976 and felon in possession of a weapon in 1978. Gilbreath was thus subject to the three-year presumptive term for this class C felony. AS 12.55.125(e)(2). Superior Court Judge Victor D. Carlson found two factors in aggravation pursuant to AS 12.-55.155(c) and sentenced Gilbreath to five years' imprisonment with eighteen months suspended. Gilbreath challenges the sentence on a variety of grounds. We affirm.

■ The first contention raised by Gilbreath on appeal is that he should not have been sentenced as a third offender, due to the fact that a prior conviction is a necessary element of misconduct involving weapons under AS 11.61.200(a)(1).[1] In *Fry v. State,* 655 P.2d 789 (Alaska App.1983), we rejected the contention that use of the same conviction to prove this element of AS 11.-61.200(a)(1) as well as to trigger application of presumptive sentencing is improper. Gilbreath's situation differs from that in *Fry* in that Gilbreath was sentenced as a third felony offender and one of his prior felonies was under the federal felon in possession statute, which, like AS 11.61.-200(a)(1), requires a prior felony conviction. *See* 18 U.S.C.App. § 1202 (1968). We are not convinced, however, that these facts require a different analysis than that used in *Fry.* Indeed, Gilbreath argued at sentencing that he should be subject to presumptive sentencing as a second offender, apparently reasoning that one of his felony convictions could be used as the underlying felony for AS 11.61.200(a)(1) while the other could be used to trigger presumptive sentencing. This would make Gilbreath's argument identical to the one rejected in *Fry.* We therefore conclude that the trial court

did not err in sentencing Gilbreath as a third felony offender. 655 P.2d at 792 & n. 2.

■ Gilbreath also challenges the findings of the sentencing court with respect to both the aggravating factors successfully alleged by the state and a mitigating factor alleged by Gilbreath, but rejected by the court. Resolution of these claims requires examination of the facts surrounding Gilbreath's offense, which were established at sentencing by means of testimony by the arresting officer and a statement by Gilbreath. Gilbreath went to the apartment of a former girlfriend, Kathy Foster, on the night of December 16, 1981, to have a few drinks. They apparently got into an argument, and he refused to leave; she called the police from outside the apartment and waited for them to arrive. When she returned with the police he was gone. Later that night, Gilbreath returned with a gun and began pounding on Foster's door. (Gilbreath claimed he wanted to retrieve his eyeglasses, and that he borrowed the gun because he thought Foster might have someone waiting for him.)

Someone apparently called the police, and three officers were dispatched to Foster's apartment building. The senior officer, Ronald Smith, heard a weapon being "cocked" or "racked" as the three were entering the foyer of the building. He then stepped out into the hallway, where he could see Gilbreath at Foster's doorway thirty or forty feet away holding a gun parallel to the floor and pointed at the door. (Gilbreath claimed that he "was not pointing the gun in any direction," that he "just had it in [his] hand and pointed sort of toward the floor" at the time Smith spotted him.) Officer Smith said, "Police officer, put the gun down," as he pointed his own weapon at Gilbreath. Gilbreath turned to

---

1. AS 11.61.200(a)(1) provides:
   *Misconduct involving weapons in the first degree.* (a) A person commits the crime of misconduct involving weapons in the first degree if he

   (1) knowingly possesses a firearm capable of being concealed on his person after having been convicted of a felony by a court of this state, a court of the United States, or a court of another state or territory.

his left, so that his gun was pointed towards Smith, and said "no." Smith again ordered Gilbreath to drop the gun, and this time Gilbreath turned away and said something to the effect of "I'm tired of it all; go ahead and shoot me." By his own admission, Gilbreath was "pretty drunk" at this point. Smith responded that he didn't want to shoot Gilbreath, that he only wanted Gilbreath to put the gun down. Gilbreath turned back towards Smith, with the point of the gun lowered somewhat. Smith yet again asked Gilbreath to drop his gun, and put his own arm down at his side. Gilbreath turned completely away again, ejected the clip out of the weapon, and the bullet out of the clip, onto the floor; he then picked up the bullet and reloaded the weapon. Finally, as he made another remark about being shot in the back, Gilbreath walked down the hallway and away from Smith. Smith told the other two officers where Gilbreath was headed. Once outside the hall, Gilbreath placed the gun on a stairway and stepped outside, where he was arrested by the other officers.

The presentence report prepared in this case contained a full list of Gilbreath's prior offenses. The court was also presented with the presentence report prepared in connection with Gilbreath's first felony conviction, the 1976 assault. It contained the following statement from Gilbreath about that offense:

> After working many hours on the pipeline, I went to Valdez for R and R. After getting drunk, I had a brief discussion with the owner of a pizza parlor and hard words ensued, and I drew a knife out of my sheath which was on my belt. I then pushed the owner of the pizza parlor back against the wall never touching him with the knife. I then left the place and was arrested by an off-duty trooper who was at the scene of the crime.
>
> I attribute the present problem to overwork on the pipeline, boredom with my job, and drunkenness. I have no hard feelings toward the owner of the pizza parlor,

as I have never met the owner before or since the incident. I believe the blame for the incident is entirely my own.

After the testimony by Officer Smith at the sentencing hearing, the parties argued the applicability of the two factors in aggravation alleged by the state, which were the following:

> (1) the conduct constituting the offense was among the most serious conduct included in the definition of the offense, [AS 12.55.155(c)(10) ]; and
>
> (2) the defendant knowingly directed the conduct constituting the offense at an active officer of the court or at an active or former judicial officer, prosecuting attorney, law enforcement officer, correctional employee, or fireman during or because of the exercise of his official duties [AS 12.55.155(c)(13) ].

The parties also argued the applicability of the mitigating factor alleged by Gilbreath, that the harm caused by his conduct was "consistently minor," AS 12.55.155(d)(13).

Gilbreath's counsel argued that the assault with a dangerous weapon was a "marginal although *prima facie* assault" and pointed out that the federal felon in possession conviction (for which Gilbreath received a sentence of two years), was based upon physical possession of a pawn ticket exchangeable for a firearm. The prosecutor was content to bring out the fact that Gilbreath's problems were related to drug and alcohol abuse, and that Gilbreath had been discharged fairly recently from a drug rehabilitation program because of his inability to stay free of drugs.

Gilbreath renews on appeal his argument, made at sentencing, that AS 12.55.155(c)(13) is inapplicable to his offense as a matter of law. Gilbreath argues that because his offense was essentially one of possession, it could not have been "directed at" a law enforcement officer.

We believe Gilbreath's argument to be unfounded. Nothing in the legislative history supports the suggestion made by Gil-

breath that this aggravating factor is to be applied only when the offense for which the defendant is being sentenced is itself susceptible to the characterization of being "directed at" someone. Instead, the statute plainly states only that the *conduct constituting the offense* must be directed at a public safety officer. Officer Smith testified that the gun was pointing directly at him when Gilbreath first turned, and that Gilbreath refused to drop the weapon at least three times. It is also clear from Gilbreath's own statement in the presentence report that he knew Smith was a policeman. We hold that the court did not err in finding that the conduct constituting Gilbreath's offense was directed at a police officer.

▪ Gilbreath argues that his offense was "complete" when Officer Smith first saw him with the gun, before he was even aware of Smith's presence, so that his subsequent conduct may not be considered under this subsection. We must reject this hypertechnical analysis. While penal statutes are to be construed strictly against the state, they are not to be read so narrowly as to deprive them of meaning and effect.

We note also that AS 12.55.155(c)(13) reflects at least two distinct legislative interests. There is a public interest in having the duties of public safety officers carried out efficiently and free from hindrance; there is a separate interest in avoiding the additional possibility of public danger generated whenever a safety officer is challenged or hindered in the execution of his

duties. Both these interests were implicated by Gilbreath's conduct even before Gilbreath refused to put down his weapon. The officers were on the scene to investigate a reported trespass, and there can be no doubt that this investigation was hindered by the fact that Gilbreath had a gun. When Officer Smith heard the gun being "racked or cocked" (he couldn't tell if it was a rifle or a handgun), he immediately drew his own weapon. Whenever an officer draws his weapon, danger to those in the vicinity is increased. (Indeed, the testimony of Officer Smith made it clear that he almost fired when Gilbreath turned toward him, pointing the gun.) Taking Gilbreath's view of this subsection would clearly frustrate its purposes and the intent of the legislature in enacting it.[2]

▪ Gilbreath next challenges the court's finding that his conduct was "among the most serious contained in the definition of the offense," AS 12.55.155(c)(10). Clearly, possession of a concealable weapon by a felon under circumstances indicating a possible intent to use the weapon against a police officer or another must rank *among the most serious* offenses defined in AS 11.61.200(a)(1). We cannot say that this finding was in error.[3]

▪ Gilbreath also asserts that the court erred in refusing to find the mitigating factor contained in AS 12.55.155(d)(13), which provides:

[T]he facts surrounding the commission of the offense and any previous offenses

---

**2.** There might, of course, be cases where application of the aggravating factor contained in AS 12.55.155(c)(13) would be inappropriate. All offenses which occur in the presence of public safety officers are not directed at them. Moreover, some crimes directed at public safety officers will be charged under statutes designed to implement the same policies evident in AS 12.55.155(c)(13). *See, e.g.,* AS 11.56.770 (hindering prosecution in the first degree). Use of the factor to aggravate the presumptive term in these cases will be expressly prohibited by AS 12.55.155(e), because the fact that the conduct was directed at an officer is already a required element of the offense. We hold only

that the circumstances of this case allow application of the factor.

**3.** Gilbreath apparently reads AS 12.55.155(c)(10) to mean "most serious conduct included in the *statute defining the offense,*" so that his conduct must be compared to the various forms of misconduct involving weapons delineated in AS 11.61.200(a) through (f). Even if this view is taken, Gilbreath's conduct does not begin to look less serious. *See* AS 11.61.200.

by the defendant establish that the harm caused by the defendant's conduct is consistently minor and inconsistent with the imposition of a substantial period of imprisonment.

Given the circumstances of the instant offense and the nature of Gilbreath's original felony, an assault with a dangerous weapon in which the victim was clearly placed in substantial fear, we are not convinced that Judge Carlson erred in refusing to find that the harm caused by Gilbreath's offenses is "consistently minor."

Finally, we cannot agree with Gilbreath's assertion that the sentence of five years with eighteen months suspended was excessive. The reasons for imposing this sentence were set forth with some specificity by Judge Carlson, and there is no suggestion that he assigned more than appropriate weight to the two aggravating factors. See *Juneby v. State,* 665 P.2d 30, 32–34 (Alaska App., 1983) (*Juneby II*).

The sentence is AFFIRMED.